UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM FRANCES WALSH, IV<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | Case Nos.: 20-cv-1709-AJB<br>          17-cr-1269-AJB<br><br>**ORDER DENYING PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255**<br><br>**(Doc. No. 1; Doc. No. 91)** |

On August 31, 2020, Petitioner William Frances Walsh, IV ("Walsh" or "Petitioner") filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 ("Motion"), alleging ineffective assistance of counsel by his trial attorney, Marc X. Carlos (Doc. No. 1; Doc. No. 91.[1]) The United States filed an opposition to the Motion (Doc. No. 99), and Petitioner filed a reply (Doc. No. 101). Having reviewed the parties' briefs, and for the reasons set forth below, the Court **DENIES** Petitioner's Motion.

---

[1] In Petitioner's civil case, 20-cv-1709-AJB, Petitioner's § 2255 motion is Doc. No. 1. In the underlying criminal case, 17-cr-1269-AJB, the same motion is filed as Doc. No. 91. Hereinafter, the Court will refer only to the docket entries in the criminal case.

1

## I. BACKGROUND[2]

### A. Factual Background

On or about April 2015, Escondido Police Department Detective Damian Jackson identified a computer using the Ares Peer-to-Peer (P2P) file sharing program and LimeWire Pro software to make digital files that had previously been identified by law enforcement as files of interest in child pornography investigations, available for download by others on the P2P network. Detective Jackson, who is assigned to the North County Child Exploitation Task Force, used a law enforcement version of the P2P software to download several videos of child pornography from the computer. Detective Jackson determined that the IP address used to download the child pornography videos was assigned to a subscriber of Cox Communications' Internet services. Records from Cox Communications established that the company had assigned the IP address in question to Patricia Chisholm at 1165 Meadowlake Drive, Vista, California. Further investigation revealed that Chisholm lived at the Vista address with Walsh, her common-law husband. Subsequently, Detective Jackson performed a site visit. At the site visit, Detective Jackson determined that there were no unsecured wireless networks in the area. Based on this information, officers obtained a search warrant for the Vista residence.

On or about July 14, 2015, officers executed a state search warrant at Walsh's residence. Through the course of executing the search warrant, the police seized a Dell Inspiration laptop and two internal hard drives. The laptop was found in a room which Walsh used as his office. Walsh admitted that the laptop belonged to him but denied accessing child pornography and alleged to have had no knowledge of LimeWire Pro being installed on the laptop. Walsh also mentioned that his stepson had used the laptop but was not privy to the password.

Detective Jackson thereafter performed a forensic analysis on the laptop to determine who accessed it and what was downloaded. The forensic analysis showed that

---

[2] The factual background is gleaned from the trial transcripts in the underlying criminal case, which the United States and Petitioner cite in their briefs.

Walsh's name, address, email address, and credit card information were used to purchase LimeWire Pro. There was no evidence on the laptop which would suggest anyone else had access to the computer.[3] Through the forensic analysis, Detective Jackson confirmed that 16 known child pornography videos had been downloaded on the laptop. While the laptop no longer contained the videos, the forensic analysis demonstrated that they had been deleted using various software tools. The analysis also revealed numerous digital artifacts showing 375 complete downloads of known child pornography titles and 85 incomplete downloads. In addition to the videos, roughly 420,000 child pornography images had been downloaded on the laptop. The images were located on the laptop as thumbnails. Petitioner was indicted and a jury trial followed.

**B. Trial Court Proceedings**

Petitioner was indicted on two counts of Distribution of Images of Minors Engaged in Sexually Explicit Conduct in violation of 18 U.S.C. § 2252(a)(2) and one count of Possession of Images of Minors Engaged in Sexually Explicit Conduct in violation of 18 U.S.C. § 2252(a)(4)(B). (Doc. No. 12.) Petitioner entered a not guilty plea. The parties filed, and the Court ruled on, various pre-trial motions to preserve evidence, compel discovery, and to exclude certain evidence. On February 27, 2018, trial commenced, and on March 2, 2018, the jury entered a verdict finding Petitioner guilty of all counts listed in the indictment. (Doc. No. 46.)

**C. Appellate Proceedings**

Petitioner appealed his conviction, sentence, and three conditions of his supervised release. On appeal, Walsh argued that the district court abused its discretion under Federal Rule of Evidence 403 by admitting a limited number of pornographic images and videos into evidence rather than accepting his proffer to stipulate as to their nature and to allow the government to describe their contents to the jury. (Doc. No. 86.) The Ninth Circuit

---

[3] For example, Detective Jackson examined who had used the laptop to log into accounts such as Facebook, email accounts, and TurboTax. All such activity was conducted through accounts associated with Walsh. Additionally, the laptop did not contain any malware which would suggest external intrusion.

3

found that the district court did not abuse its discretion by admitting the images and videos into evidence. (*Id.*) The Ninth Circuit, however, found that the three conditions of Walsh's supervised release were unconstitutionally vague and therefore remanded the matter to this Court to modify the conditions. (*Id.*) The amended judgment was entered on January 17, 2020. (Doc. No. 87.) Petitioner subsequently filed a writ of certiorari to the Supreme Court, which was denied, and on September 1, 2020, he filed the instant § 2255 motion.

## II.     LEGAL STANDARD

A federal prisoner in custody under a sentence of a court may move to vacate, set aside, or correct the sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255. To warrant relief under § 2255, a prisoner must allege a constitutional, jurisdictional, or otherwise "fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Timmreck*, 441 U.S. 780, 783 (1979) (quoting *Bowen v. Johnston*, 306 U.S. 19, 27 (1939)). If it is clear the petitioner has failed to state a claim, or has "no more than conclusory allegations, unsupported by facts and refuted by the record," a district court may deny a § 2255 motion without an evidentiary hearing. *United States v. Quan*, 789 F.2d 711, 715 (9th Cir. 1986).

## III.    DISCUSSION

In support of his Motion, Petitioner asserts a violation of his Sixth Amendment right to effective assistance of counsel. The Supreme Court set forth the test for demonstrating ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on a claim of ineffective assistance of counsel, a petitioner must first show that (1) counsel's representation was deficient such that it "fell below an objective standard of reasonableness," and (2) counsel's deficient performance prejudiced the petitioner such

that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687–88, 694.

The first prong of the *Strickland* test requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. There is a "strong presumption that counsel's conduct falls within the wide range of professional assistance." *Id.* at 689; *United States v. Molina*, 934 F.2d 1440, 1447 (9th Cir. 1991). Furthermore, "[t]he reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, a petitioner must show that his counsel's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Denham v. Deeds*, 964 F.2d 1501, 1505 (9th Cir. 1992). Unless the petitioner can make both showings, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process[.]" *Strickland*, 466 U.S. at 687.

Here, Petitioner argues that his former counsel rendered ineffective assistance because he: (A) failed to request a *Franks* hearing, (B) failed to call a payroll specialist as an expert witness, (C) failed to call a computer forensic expert, and (D) failed to object to jury instructions. (Doc. No. 91 at 3–13.)[4] The Court discusses each argument in turn.

//
//
//

---

[4] The pinpoint page citations refer to the ECF-generated page numbers at the top of each filing.

### A. *Franks* Hearing

First, Petitioner argues that his counsel provided ineffective assistance by failing to request a *Franks* hearing to challenge the validity of the affidavit supporting the search warrant for his residence. A *Franks* hearing determines "the validity of the affidavit underlying a search warrant." *United States v. Kleinman*, 880 F.3d 1020, 1038 (9th Cir. 2017). A defendant is entitled to such a hearing if he "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978); *United States v. Craighead*, 539 F.3d 1073, 1080 (9th Cir. 2008). "'Probable cause to search a location exists if, based on the totality of the circumstances,' a 'fair probability' exists that the police will find evidence of a crime." *United States v. Norris*, 942 F.3d 902, 910 (9th Cir. 2019) (quoting *United States v. Perkins*, 850 F.3d 1109, 1119 (9th Cir. 2017)).

Petitioner alleges that his counsel should have requested a *Franks* hearing because Detective Jackson "did not and could not with absolute certitude, confirm that the wireless network at 1165 Meadowlake Dr., Vista, was 'SECURED.'" (Doc. No. 91 at 4.) Additionally, Petitioner argues that Detective Jackson stated that five videos were obtained from the IP address on Meadowlake Dr., while the government's exhibits showed only four, and each of the exhibits lacked a date or time stamp. (*Id.*) Further, Petitioner alleges that Detective Jackson's computer operating system was outdated and thus was a "materially insufficient operating system." (Doc. No. 101 at 4.) The Court disagrees.

In former counsel's declaration, he attested that "he thoroughly investigated the matter, including speaking to [Walsh's] trial counsel in the state court mater, and found no credible basis for a challenge under *Franks*." (Doc. No. 99-1 at 2.) Indeed, Detective Jackson's undisputed testimony at trial confirmed "there were no open internet networks in the vicinity of the Walsh resident" and "there was no password to access the router used in the household." (Doc. No. 99 at 9.) And although Detective Jackson testified that he

could not "specifically" identify which Wi-Fi network belonged to Walsh, he was able to determine that there were no unsecured networks in the area. His testimony therefore supports the conclusion that Petitioner's network was secure. Thus, Petitioner's reliance on Detective Jackson failing to "specifically" testify that the network at 1165 Meadowlake Dr. was "secure" lacks merit.

Furthermore, whether Detective Jackson relied on four or five videos in support of the search warrant, the totality of the circumstances still demonstrated "a fair probability [] that the police [would] find evidence of a crime. *Norris*, 942 F.3d at 910. The alleged discrepancy is therefore inconsequential to the probable cause determination. *See id.* As to the status of Detective Jackson's operating system, Walsh speculates that the presence of a software update notification on Detective Jackson's computer necessarily casts doubt on the reliability of his investigation. Apart from speculation, however, Walsh presents no specific evidence or argument to substantiate his claim that the operating system was "materially insufficient." Without more, the Court declines to find that the software update notifications on Detective Jackson's computer affects the legitimacy of his investigation and impugns his warrant affidavit.

For the foregoing reasons, the Court finds that Walsh has not carried his burden of making a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit" or that any of the alleged falsities were "necessary to the finding of probable cause." *Franks*, 438 U.S. at 155–56 (1978). As such, Walsh's assertions would not have entitled him to a *Franks* hearing. *Cf. Perkins*, 583 F.3d at 1115 (substantial preliminary showing met where the warrant affidavit stated Perkins had been charged with possession of child pornography in Canada, but did not state that the charge was dropped); *United States v. Johns*, 851 F.2d 1131, 1133–34 (substantial preliminary showing met where the affidavit alleged that the officers smelled an odor which experts refuted to be scientifically impossible due to the contents of the space). Accordingly, as there was no basis for a *Franks* hearing in Walsh's case, the Court does not find former counsel's

decision not to request such a hearing deficient. *See, e.g.*, *Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994) ("A lawyer's zeal on behalf of his client does not require him to file a motion which he knows to be meritless on the facts and the law.").

There being no evidence sufficient to rebut the strong presumption that counsel's performance "falls within the wide range of professional assistance," the Court finds that Petitioner has not satisfied the first prong of the *Strickland* test. As Petitioner has not met his burden to establish deficient performance, his ineffective assistance of counsel claim on this basis necessarily fails. *See Gonzalez v. Wong*, 667 F.3d 965, 987 (9th Cir. 2011) (citing *Strickland*, 466 U.S. at 697) ("Because failure to meet either prong is fatal to [Petitioner's] claim, there is no requirement that [the Court] 'address both components of the inquiry if the defendant makes an insufficient showing on one.'"). Accordingly, the Court **DENIES** Petitioner's motion on this basis.

### B. Expert Payroll Specialist Witness

Second, Petitioner asserts that his trial counsel rendered ineffective assistance by failing to call an expert payroll specialist to testify regarding the format of his employee timecards. (Doc. No. 91 at 6–8.) Petitioner alleges that expert testimony was necessary to explain the computer-generated format of the timesheets. (*Id.*) He claims that this explanation would have established his alibi, and ultimately, his innocence. (*Id.*) The Court disagrees.

Considering the second *Strickland* prong, the Court finds Petitioner's arguments concerning the need for a payroll expert unavailing. *See generally*, 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."). According to Petitioner, his work schedule was configured in a way that the shift would begin on the evening of one day and end on the next, and the time records reflect the hours worked on the day on which the shift ends. (Doc. No. 91 at 8.) Petitioner asserts that an expert was required to explain these time records. (*Id.*) He claims that he could not have committed the crimes he was accused of because he was at work, and the time records would establish

his alibi. (*Id.*) Upon review of the record, however, the Court finds that the result of the proceeding would not have been different had former counsel called a payroll specialist to testify. *See Strickland*, 466 U.S. at 694.

At trial, Mr. Carlos solicited testimony from Walsh concerning his time records. (Doc. No. 69 at 73.) Walsh testified, "I was working Thursday, May 7th, which - - I would have started at 1900 Thursday night into the next morning, getting off the next morning." (*Id.* at 73–74.) The government, in its cross examination of Ms. Chisholm however, established that Walsh did not work on May 7. (*Id.* at 37.) Moreover, the indictment states that Detective Jackson successfully completed the downloaded of two digital files of interest "on May 7, 2015, between 12:28 hours and 12:42 hours PDT." (Doc. No. 1 at 3) This means the downloads occurred in the early morning hours of May 7, 2015. And although Walsh testified that he was at work on Thursday, he specified that he began work at night. As such, Walsh's claim that he could not have committed the crimes because he was at work—and that a payroll specialist would prove this—is unavailing. The jury fully considered Walsh's and Chisholm's testimonies, as well as the time records at issue. They did not believe his alibi.

For the foregoing reasons, the Court finds that Walsh has not shown that the decision not to call a payroll specialist to explain the format of his employee timecard undermines confidence in the outcome of his case. As such, he has not demonstrated "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. *See also Hughes v. Hubbard*, 246 F.3d 674 (9th Cir. 2000) (finding counsel provided professionally competent assistance when the failure to call an expert would not have affected the outcome of the trial). Accordingly, the Court **DENIES** Petitioner's motion on this basis.

### C. Computer Forensic Expert Witness

Third, Petitioner alleges counsel provided ineffective assistance by failing to call a computer forensic expert to testify about the forensic evidence found on Petitioner's laptop. (Doc. No. 91 at 10.) Petitioner argues that the forensic expert would explain the difference

between "allocated" and "unallocated" space on a computer's hard drive. (*Id.*) Petitioner alleges the forensic expert would testify that all child pornography associated with the laptop was in unallocated space, thereby proving that Petitioner had no knowledge of the offending images and videos. Petitioner relies on *United States v. Flyer* for the proposition that the mere presence of images of child pornography in unallocated space of a computer hard drive does not, standing alone, prove knowing possession of child pornography. *See* 633 F.3d 911, 917–18 (9th Cir. 2011). Petitioner's reliance on *Flyer* is misplaced.

In *Flyer*, the defendant was charged with and convicted of various violations of 18 U.S.C. § 2252. On appeal, the Ninth Circuit held that there was insufficient evidence of knowing possession because, on the date alleged in the indictment, all child pornography files had been deleted and were found only in the unallocated area of the defendant's hard drive. *Id*. The government conceded that there was no evidence that the defendant knew about these files or that he had the ability to access them. *Id*. at 918. As such, the *Flyer* court concluded that the "deletion of an image alone does not support a conviction for knowing possession of child pornography on or about a certain date within the meaning of § 2252(a)(4)(B)," given that there was "[n]o evidence . . . that on or about April 13, 2004, Flyer could recover or view any of the charged images in unallocated space or that he even knew of their presence there." *Id*. at 920.

To be sure, *Flyer* does not stand for the proposition that if the only identified images of child pornography are found in unallocated space or internet cache, a defendant can never be found guilty of knowing possession of child pornography. Notably, the "government concede[d] that it presented no evidence that Flyer knew of the presence of the files on the unallocated space of his Gateway computer's hard drive." *Id.* at 919. Additionally, the government "presented no evidence that Flyer had the forensic software required to see or access the files," or that "he accessed, enlarged, or manipulated any of the charged images." *Id.*

There is no similar lack of evidence concerning a knowing possession here. Unlike in *Flyer*, the government in this case presented ample evidence to establish Walsh's

knowledge. Specifically, at trial, the government presented direct and circumstantial evidence of Walsh's knowing possession of child pornography, including: (1) forensic evidence that located child pornography files on Petitioner's laptop, (2) Petitioner confirmed that the laptop at issue belonged to him, (3) the laptop was password-protected, (4) the P2P programs which had been run over a hundred times—resulting in hundreds of completed downloads of child pornography, (5) the laptop's media player which had been used to view child pornography videos, (6) around the time of some of the downloads, Walsh was logging into an online website with his username, and (6) the internet connection at the Walsh household was password-protected. The government's showing evidenced that Walsh had dominion and control over the child pornography images and videos.

Returning to Petitioner's ineffective assistance of counsel claim, the Court finds that Petitioner's trial counsel did not provide deficient performance in failing to call a forensic computer expert. In Mr. Carlos's declaration, he asserts that he consulted with Walsh's state court trial counsel, who had retained a forensic specialist. (Doc. No. 99-1 at 4.) It was Mr. Carlos's opinion that "the expert might damage the defense case due to the inability to account for unallocated space." (*Id.*) Furthermore, Mr. Carlos discussed the matter with the expert and determined the testimony would be problematic. (*Id.*) Mr. Carlos reasonably believed that cross-examination of the expert could potentially be detrimental to the defense's case. *See McCoy v. Louisiana*, 138 S. Ct. 1500, 1508 (2018) ("Trial management is the lawyer's province: Counsel provides his or her assistance by making decisions such as 'what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence.'" (citation omitted)). Considering the highly deferential review afforded to counsel's performance, the Court does not find that former counsel's decision not to call a forensic expert falls outside the wide range of professional assistance. *See Strickland*, 466 U.S. at 689. After assessing the value of the forensic expert's testimony, former counsel concluded that the testimony would be more hurtful than helpful and therefore elected not to have the expert testify. The Court considers

this "sound trial strategy." *Id.* (quotations omitted). Consequently, Petitioner has not established deficient performance in this regard and therefore has not satisfied the first *Strickland* prong.[5] Accordingly, the Court **DENIES** Petitioner's motion on this basis.

**D. Jury Instructions**

Finally, Petitioner claims that his former counsel rendered ineffective assistance because he did not object to Jury Instruction No. 11 based on the Ninth Circuit's holding in *Flyer*. Jury Instruction No. 11 provides:

> The indictment charges that the offense alleged in each count was committed "on or about" a certain date.
>
> Although it is necessary for the government to prove beyond a reasonable doubt that the offense was committed on a date reasonably near the date alleged in each count of the indictment, it is not necessary for the government to prove that the offense was committed precisely on the date charged.

(Doc. No. 41 at 11.) The Court disagrees with Walsh's contention that his former counsel should have objected to this instruction pursuant to *Flyer*.

As previously discussed, *Flyer* is distinguishable because unlike in that case, there was ample evidence to establish Petitioner's knowledge and dominion of the child pornography images and videos on his laptop on or about the date in question—e.g., the fact that a username linked to Walsh's email address accessed RadioReference.com, a website Walsh admitted to using, on May 7, 2015, the same time that Detective Jackson downloaded one of the pornography videos from Walsh's IP address; the laptop did not contain any malware suggesting external intrusion; and the laptop and network were both password-protected. Considering that *Flyer* is not analogous, the Court sees no reason why

---

[5] Although unnecessary, the Court finds that Petitioner's claim also fails under the second prong of *Strickland*. Considering the government's presentation of substantial evidence of Walsh's knowing possession of child pornography, the Court finds that a forensic expert's testimony about the difference between allocated and unallocated space on a hard drive would not have changed the outcome of this case. Walsh has therefore not shown that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Accordingly, Petitioner was not prejudiced by counsel's decision to not call a forensic computer expert.

former counsel should have been expected to object to jury instructions based on that case. Petitioner's misplaced reliance on *Flyer* does not overcome the strong presumption of professional assistance. Thus, he failed to satisfy *Strickland*'s first prong. *See* 466 U.S. at 689. Accordingly, the Court **DENIES** Petitioner's motion on this basis.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Petitioner's motion, the briefs filed in support thereof and opposition thereto, and the record in this case, "conclusively show that [Petitioner] is entitled to no relief." 28 U.S.C. § 2255(b). As such, an evidentiary hearing is not warranted in this case. *See id.* Accordingly, the Court **DENIES** Petitioner's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.

Lastly, absent a certificate of appealability from the circuit court or the district court, "an appeal may not be taken from a final decision of a district judge in a habeas corpus proceeding or a proceeding under 28 U.S.C. § 2255." *Chafin v. Chafin*, 568 U.S. 165, 184 (2013). A court may issue a certificate of appealability where the petitioner has made a "substantial showing of the denial of a constitutional right," and reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Petitioner has not made the necessary showing. Thus, the Court **DENIES** him a certificate of appealability. The Clerk of the Court is instructed to close the case and enter judgment accordingly.

**IT IS SO ORDERED**.

Dated: December 27, 2021

Hon. Anthony J. Battaglia
United States District Judge